UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOUGLAS E. KAMPFER,

                                                        *Plaintiff*,

                   -against-                                            13-CV-0082

ANDREW M. CUOMO, (Governor, State of New York)        GLS/ATB

                                                   *Defendant*.
_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

                                                  ERIC T. SCHNEIDERMAN
                                                Attorney General of the State of New York
                                                Attorney for Defendant Andrew M. Cuomo
                                                The Capitol
                                                Albany, New York  12224-0341

Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 474-3340
Fax:  (518) 473-1572 (Not for service of papers)                Date: November 27, 2013

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT…………………………………………………………………………………...2

      THE ENTRY OF DEFAULT SHOULD BE SET ASIDE……………………………..2

CONCLUSION…………………………………………………………………………………..10

**PRELIMINARY STATEMENT**

This action was commenced challenging New York State's Safe Act by the filing of a complaint on January 23, 2013.  See Dkt. No. 1.  Following service of the complaint, the defendant timely filed a motion to dismiss on April 2, 2013.  See Dkt. No. 17.  On May 9, 2013, the plaintiff filed an amended complaint while defendant's motion to dismiss the original complaint was still pending without opposition.  See Dkt. No. 21.

Despite the parties having corresponded by mail and telephone on several occasions on a variety of issues, the plaintiff filed a request for entry of default against the defendant on June 3, 2013 without any good faith attempt to address the issue with defense counsel.  On June 4, 2013, while defendant's original motion to dismiss was still pending, the defendant requested that the court consider defendant's motion to dismiss the original complaint as against the amended complaint.  See Dkt. No. 22.  On June 17, 2013 the court informed the parties of the briefing schedule on defendant's motion to dismiss the amended complaint.  See Dkt. No. 24.  On June 21, 2013 the plaintiff filed his opposition to defendant's motion to dismiss the amended complaint.  See Dkt. No. 25.  Additionally, plaintiff requested oral argument on defendant's motion on June 21, 2013 and June 24, 2013.  See Dkt. Nos. 26, 29.  The court denied those requests on June 24, 2013 and July 10, 2013. See Dkt. Nos. 27, 30.

Over four months later, the court issued an order directing the entry of a default against the defendant based on defendant's allegedly late response to the amended complaint over five months earlier.  See Dkt. No. 31, 32.  This memorandum of law is submitted on behalf of the defendant in support of his motion to set aside the entry of default pursuant to FRCP 55(c).

1

## ARGUMENT

<u>THE ENTRY OF DEFAULT SHOULD BE SET ASIDE</u>

An entry of default may be set aside pursuant to FRCP 55(c) for good cause. The "good cause shown" standard "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." <u>Guggenheim Capital LLC v. Birnbaum</u>, 722 F3d 444, 454-55 (2d Cir. 2013). "Other equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." <u>EnRon Oil Corp. v. Diakuhara</u>, 10 F3d 90, 96 (2d Cir. 1993).

The entry of default should be set aside in this case. As the Second Circuit stated,

> We first note that the district court was not faced with a defendant who failed to appear or defend the action against him. Not only did [defendant] respond to plaintiff's first amended complaint with a motion to dismiss, but he also participated with plaintiff in discovery. Although he did not file a motion to dismiss the second amended complaint, his original motion to dismiss was responsive to the second amended complaint, as the amended charges did not substantially alter the original allegations made against him. . .

<u>Id.</u> at 97. The circumstances in the present case are strikingly similar to those in <u>Enron</u>. Following service of the original complaint, the defendant timely filed a motion to dismiss on April 24, 2013. <u>See</u> Dkt. No. 17. While defendant's motion to dismiss the original complaint was still pending without opposition, the plaintiff filed an amended complaint. <u>See</u> Dkt. No. 21. Twelve days after a response to the amended complaint was due pursuant to the FRCP, the plaintiff requested an entry of default against the defendant. <u>See</u> Dkt. No. 23. Immediately upon receipt of plaintiff's request for a default, the defendant filed a letter with the court requesting that the outstanding motion to dismiss be considered in connection with plaintiff's amended

complaint.  See Dkt. No. 22.  The court thereafter set a briefing schedule on defendant's motion to dismiss the amended complaint, and the plaintiff responded to said motion and requested oral argument.  See Dkt. Nos. 24, 25, 26, 29, 30.  Under these circumstances, the entry of default should be set aside.  EnRon, 10 F3d at 96.

It is clear in the record of this case, that defendant's less than two week delay in responding to plaintiff's amended complaint was inadvertent and not willful.  Like the defendant in EnRon, the defendant herein "made a good faith effort to adhere to the rules of the court and to protect his rights, and therefore did not wilfully default."  Enron, 10 F3d at 98.  Defense counsel's error in not timely responding to the amended complaint while defendant's motion to dismiss the original complaint was pending was due to a calendaring error, and was rectified immediately upon becoming aware of the error.  See Kerwin aff. at 7.  Based on defendant's defense of this case since its inception as a whole, it cannot be found that the less than two week delay in responding to plaintiff's amended complaint while a motion was pending was willful.

Additionally, the defendant has a meritorious defense to plaintiff's claims. To "make a sufficient showing of a meritorious defense in connection with a motion to set aside a default, the defendant need not establish his defense conclusively, but he must present credible evidence of facts that would constitute a complete defense."  State Farm Mutual Automobile Ins. Co. v. Cohan, 409 FedAppx 453, 456 (2d Cir. 2011) (citing Enron, 10F3d at 98).  As demonstrated in defendant's motion to dismiss the original complaint and, subsequently, the amended complaint, defendant has a meritorious defense pursuant to FRCP 12(b)(6).  See Dkt. Nos. 17, 22.

Specifically, plaintiff challenges the constitutionality of the "grandfather clause" contained in New York State's SAFE Act legislation, which enacted significant reforms to

3

prevent gun violence, from increasing the safety of New York's schools by regulating the possession of firearms on school property and forming a statewide team of specialists to review and assist schools in developing school safety plans, to providing for greater safety for families in New York by allowing judges to temporarily remove firearms from those subject to a protective order where the court finds a substantial risk of violence against the person protected by the order.

The SAFE Act, among other things, toughens regulations to limit access to firearms by those with a disqualifying mental health condition; requires federal background checks for most private sales of guns; advances a statewide database and greater uniformity in licensure; and provides a variety of other protections and enhancements to gun use licensure.  Several sections of the SAFE Act provide for new and enhanced penalties for illegal gun use, including, for example, §§ 33-36, increased penalties for the murder of certain first responders and the adoption of a new Penal Law § 460.22 addressing the threat to public safety of certain organized violent gangs and their illegal purchases of weapons in their enterprise.

As is relevant to this action, the SAFE Act also amended the existing state ban on assault weapons, enacted in 2000[1], by broadening the definition of assault weapon, immediately banning their sale and purchase but permitting the continued possession of those lawfully owned as of the effective date of the law if such weapons are registered within fifteen months of the effective date of the Act.  Indeed, owners of such grandfathered assault weapons are authorized to sell them out of state or through an in-state federal firearms licensee.  Section 38 of the SAFE Act amended the existing law on large capacity ammunition feeding devices banning the acquisition

---

[1] The 2000 enactment of New York State Penal Law §265.00(22) codified in state law the federal assault weapons ban that went into effect in 1994.  18 U.S.C. §922.

of certain large capacity magazines while allowing for a year to transfer magazines lawfully possessed prior to the enactment of the law. On March 28, 2013, as part of the 2013-2014 budget, the Legislature made technical amendments to the SAFE Act. That portion of the SAFE Act which limited magazine size to those capable of holding seven rounds was permanently suspended. Magazines capable of holding up to ten rounds may be lawfully possessed and sold. See L. 2013, Part FF, ch. 57

The amended complaint alleges that this grandfather clause violates "federal law" and is "arbitrary and capricious." See Dkt. No. 21 at ¶5. However, the amended complaint fails to contain facts sufficient to state any cognizable claim. Plaintiff's vague passing references to his Second Amendment rights in the threadbare amended complaint provide no basis for a facial constitutional challenge here. In District of Columbia v. Heller, 554 US 570 (2008), the Supreme Court held that the Second Amendment protects an individual's right to possess a *handgun* in his or her home for the purpose of self-defense, and in McDonald v. City of Chicago, 130 SCt 3020 (2010), the Court found this right applicable against the States under the Fourteenth Amendment. However, neither decision holds, or even suggests, that the Second Amendment protects a right to possess assault weapons or other military-style weapons. To the contrary, both decisions recognize that the Second Amendment does *not* guarantee a right to possess "any weapon whatsoever." Heller, 554 US 626, McDonald, 130 SCt at 3047. Instead Heller expressly states that weapons "most useful in military service" may be banned even if that would leave citizens with access only to "small arms." Id. at 628. The Court also noted that the historic tradition of prohibiting the carrying of "'dangerous and unusual weapons'" supports an important limitation on the right to keep and carry arms. Id. at 627 (quoting 4 Blackstone 148-

5

149 [1769]).

Indeed, post-Heller, it has been held that bans of assault weapons, large capacity magazines, and certain other dangerous firearms do not violate the Second Amendment and are lawful exercises of the government's police powers.  In the Heller case itself, on remand, the D.C. Circuit upheld a statute restricting assault weapons and large capacity magazines.  Heller v. District of Columbia, 670 F.3d 1244, 1264 (D.C. Cir. 2011).  Similarly, a California appellate court upheld an assault weapon ban, explaining that under Heller "the Second Amendment right does not protect possession of a military M-16 rifle. . . . Likewise, it does not protect the right to possess assault weapons or .50-caliber BMG rifles."  People v. James, 174 CalApp4th 662, 676 (Cal. App. 3d Dist. 2009).  So too, the federal courts of appeals have upheld under Heller prohibitions on the possession of machine guns and short-barreled rifles, United States v. Gilbert, 286 Fed. Appx. 383, 386 (9th Cir. 2008), cert. denied, 555 US 1038 (2008), and handguns with obliterated serial numbers, United States v. Marzzarella, 614 F3d 85, 97 (3d Cir. 2010).  Indeed, Marzzarella upheld the ban in question even as it applied to possession in the home, because it leaves individuals free to choose other, lawful firearms.  Id.

With these principles in mind, the SAFE Act clearly stands as facially constitutional.  The SAFE Act broadened the definition of "assault weapon," to include semi-automatic guns with detachable magazines that possess one feature commonly associated with military weapons.  The Act  does not ban all or even most firearms, including handguns, shotguns, and rifles which have been customarily used for protection in the home, hunting or target shooting, but only military-style weapons deemed by the Legislature to pose a particular public safety threat.  See Penal Law 265.00 (22).  The Second Amendment clearly does not grant an absolute and unrestricted right to

carry an assault weapon, and indeed, Heller pointedly acknowledged that the Second Amendment does *not* guarantee a right to possess "any weapon whatsoever," Heller, 554 US 626, McDonald, 130 SCt at 3047, and weapons "most useful in military service" may be banned even if that would leave citizens with access only to "small arms." Id. at 628.

The grandfather clause of the SAFE Act must be upheld if it is rationally related to a legitimate government state interest. City of Cleburne v. Cleburne Living Ctr., 473 US 432, 439, 440 (1985). See also Kachalsky v. Cacace, 817 FSupp2d at 273; Hightower v. City of Boston, 693 F3d 61, 83 (1st Cir. Mass. 2012) (Applying rational basis review to constitutional challenge in regard to gun licensing); Kwong v. Bloomberg, 876 FSupp2d 246 (S.D.N.Y. 2012) (Applying rational basis review in challenge to New York's gun licensing fees because the law "involves no suspect classification and imposes no burden on the Second Amendment right to keep and bear arms.").

The legislative history of the SAFE Act illustrates that the purpose of the Act was to "reduc[e] the availability of assault weapons and deter[] the criminal use of firearms" in New York State, while "promoting a fair, consistent and efficient method of ensuring that sportsmen and other legal gun owners have full enjoyment of the guns to which they are entitled." See A02388 Sponsor Memorandum (appended hereto). Clearly, limiting the number of assault weapons within New York reduces the availability of such weapons and, as noted above, have been found to advance the government's public safety interests. See e.g. Heller, 670 F3d at 1264. The Legislature rationally balanced this legitimate state interest with the "reliance interests" of owners of weapons previously permitted, but now banned, by the Safe Act, by including a "grandfather clause" permitting those weapons already legally present in the state to remain in

7

the state.  Russell v. Bd. of Plumbing Examiners of the County of Westchester, 74 FSupp2d 339, 346 (SDNY 1999) (upholding grandfather clause permitting plumbers to continue working in localities in which they previously worked, notwithstanding the enactment of a statute limiting the localities in which plumbers could work). See also Sklar v. Byrne, 727 F2d 633, 639 (7th Cir. 1984) (stating that "[g]randfather clauses almost always favor established residents or businesses" because where "the purpose of the grandfather clause is the protection of reliance interests, only established residents or businesses will have relied on prior laws and thus will have reliance interests to protect.")

On very similar facts, the Seventh Circuit held that a local ordinance limiting handguns in the City of Chicago to those already legally owned within the City on the date of the enactment of the ordinance did not violate constitutional protections.  The court found that the grandfather clause was rationally related to the legitimate state interest of limiting the number of guns within the City of Chicago in an effort to "freeze[] the current distribution of legal handguns in Chicago and prohibit[] their owners from replacing the guns they now own."  Sklar, 727 F2d at 638.[2] The court stated that "[r]ather than ban all private possession of handguns, the city enacted an ordinance which said, in effect. "So much and no more."  Id. at 639.  Since the grandfather clause of the Safe Act is rationally related to the legitimate state interest of limiting the number of assault weapons in New York State, the complaint fails to state a constitutional claim.

Regardless of the lack of merit to plaintiff's constitutional claims themselves as discussed in the pending motion, the Governor, of course, enjoys legislative immunity for his legislative actions.  His approval of the bill is clearly a legislative act for which he is entitled to immunity in

---

[2] Although the handgun ban in Sklar would not likely survive post-Heller, the case is instructive on the permissibility of grandfather clauses when regulating gun ownership and possession.

this litigation. Such immunity cannot be lightly case aside as noted by the United States Supreme Court waiver "can be found only after explicit and unequivocal renunciation of the protection" United States v. Helstoski, 442 U.S. 477, 491 (1979). Regardless of the court's rulings on the pending threshold motion to dismiss, it is clear that the Governor is immune from suit, a ground available in his answer, and plaintiff suffers no prejudice by the technical error on which he here relies. Based on this law, and the lack of any allegations in the amended complaint sufficient to state a constitutional claim, the defendant has a meritorious defense in this action.

Finally, setting aside the entry of default will not prejudice plaintiff and, in fact, the litigation will remain at the same stage that it was in when the default was entered – specifically, a motion to dismiss the amended complaint will be pending. "[D]elay alone is not a sufficient basis for establishing prejudice. . . [r]ather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted). Other than waiting an extra twelve days last spring to learn how the defendant would respond to his amended complaint, the plaintiff cannot identify any prejudice that would flow from the setting aside of the entry of default in this case.

Based on the foregoing, the defendant has demonstrated good cause for the setting aside of the entry of default and therefore his motion should be granted.

## CONCLUSION

For the reasons discussed above, defendant's motion to set aside the entry of default pursuant to FRCP 55(c) should be granted.

Dated: Albany, New York
       November 27, 2013

                                      ERIC T. SCHNEIDERMAN
                                      Attorney General of the State of New York
                                      Attorney for Defendant Andrew M. Cuomo
                                      The Capitol
                                      Albany, New York  12224-0341

                                      By: *s/ Adrienne J. Kerwin*
                                      Adrienne J. Kerwin
                                      Assistant Attorney General, of Counsel
                                      Bar Roll No. 105154
                                      Telephone:  (518) 474-3340
                                      Fax:  (518) 473-1572 (Not for service of papers)
                                      Email: Adrienne.Kerwin@ag.ny.gov

TO:    Douglas E. Kampfer (via U.S. mail)
           Plaintiff pro se
           P.O. Box 747
           142 Kunkel Point Road
           Mayfield, NY  12117