**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS E. KAMPFER,**

                   **Plaintiff,**        **6:13-cv-82**
                                        **(GLS/ATB)**

     **v.**

**ANDREW CUOMO,** Governor
State of New York,

                   **Defendant.**
_____

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Douglas E. Kampfer
Pro Se
P.O. Box 747
142 Kunkel Point Road
Mayfield, NY 12117

**FOR THE DEFENDANT:**
HON. ERIC T. SCHNEIDERMAN     ADRIENNE J. KERWIN
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff *pro se* Douglas E. Kampfer commenced this action, which

attacks the New York Secure Ammunition and Firearms Enforcement Act[1] (hereinafter "the SAFE Act"), against Andrew M. Cuomo, Governor of the State of New York.  (Am. Compl., Dkt. No. 21 at 3-6.)  Pending are Cuomo's motions to set aside entry of default, (Dkt. No. 33), dismiss the complaint, (Dkt. No. 17), and requesting that the court consider the original motion to dismiss as against the amended complaint, (Dkt. No. 22), and Kampfer's cross motion for default judgment, (Dkt. No. 34).  For the reasons that follow, Cuomo's motions are granted, and Kampfer's cross motion is denied.

## II.  **Background**

### A.  **Facts**[2]

On January 15, 2013, Cuomo signed the SAFE Act into Law.  (Am. Compl. ¶ 4.)  Cuomo publicly commented that, in light of the tragedy in Newtown, Connecticut, the legislation was "necessary . . . to protect the lives of citizens of the State of New York."  (*Id.*)  By virtue of the SAFE Act's passage, Kampfer, who did not own an "assault weapon" prior to

_____

[1] *See* L. 2013, ch. 1, *amended by* L. 2013, ch. 57, pt. FF.

[2] The facts are drawn from Kampfer's amended complaint and presented in the light most favorable to him.

January 15, 2013, is now precluded from owning such a firearm.[3]  (*Id.*)

The SAFE Act also bans felons and the mentally ill from owning "assault

weapons," but Kampfer is not a felon, nor has he been declared mentally

ill.  (*Id.*)

## B.    The SAFE Act

As relevant here, the SAFE Act amended the definition of "[a]ssault

weapon" provided in Penal Law § 265.00(22), and "[l]arge capacity

ammunition feeding device" set forth in Penal Law § 265.00(23).  L. 2013,

ch. 1, §§ 37, 38.  As amended by the SAFE Act, the definition of "assault

weapon" is defined as: (1) a semiautomatic rifle with the ability to accept a

detachable magazine plus one additional listed characteristic; (2) a

semiautomatic shotgun plus one additional listed characteristic; (3) a

semiautomatic pistol with the ability to accept a detachable magazine plus

one additional characteristic; (4) a revolving cylinder shotgun; (5) certain

semiautomatic rifles, shotguns, and pistols that were formerly explicitly

excepted from the definition; and, finally, (6) semiautomatic rifles,

---------------------------

[3] The court ascribes the same meaning to "firearm," as it is used
throughout this Memorandum-Decision and Order, as does the Penal
Law.  *See* N.Y. Penal Law § 265.00(3).

shotguns, or pistols meeting any of the first three definitions and possessed prior to January 15, 2013.[4]  *See* N.Y. Penal Law § 265.00(22)(a)-(f).  While the definition of "[a]ssault weapon" was expanded, which had the practical effect of criminalizing the possession of a greater number of guns or otherwise restricting them, *see, e.g.*, N.Y. Penal Law §§ 265.00(3)(e), 265.01-b(2), 265.02(7), 265.10(2), (3), 400.00(16-a), a grandfather provision was also included that permitted certain individuals who possessed "assault weapons," as defined by § 265.00(22)(e) and (f), before the January 15, 2013 effective date to lawfully continue to possess such "assault weapons," but required registration of them within a prescribed time period.  L. 2013, ch. 1 §§ 37, 48 (codified at N.Y. Penal Law § 265.00(22)(g)(v); § 400.00(16-a)).

The definition of "[l]arge capacity ammunition feeding device" was expanded to include, among other things, devices with a capacity of ten or less rounds of ammunition, but "containing more than seven rounds of ammunition," or those obtained after the effective date that have "a

_____

[4] Prior to passage of the SAFE Act, the definition, as it related to semiautomatic rifles, shotguns, and pistols, required the presence of at least two of the additional listed features.  *See* Penal Law § 265.00(22)(a)-(c) (2010).  The older version also encompassed specific models of guns or copies or duplicates of them.  *Id.* § 265.00(22)(d).

capacity of, or that can be readily restored or converted to accept, more than seven rounds of ammunition." L. 2013, ch. 1, § 38. Related to ammunition feeding devices, Penal Law § 265.37 was added, which makes unlawful the knowing possession of an ammunition feeding device that was possessed before the effective date and has the capacity to accept more than seven but less than ten rounds of ammunition if it contains more than seven rounds of ammunition. L. 2013, ch. 1, § 46-a. The provisions related to ammunition feeding devices have since been amended, however, and the definitional portion has been "suspended and [is] not effective," whereas § 265.37 now prohibits only the knowing possession of an ammunition feeding device where such device contains more than seven rounds of ammunition. L. 2013, ch. 57, pt. FF, §§ 2, 4.

## C.   Procedural History

Kampfer commenced this action on January 23, 2013. (Dkt. No. 1.) Before filing an answer, Cuomo moved to dismiss the complaint for failure to state a claim. (Dkt. No. 17.) In response to that motion, and less than twenty-one days after it was filed, Kampfer filed an amended complaint.[5]

_____

[5] Because Kampfer had not previously amended his pleading, he was entitled, as a matter of course, to amend the complaint within twenty-

5

(*See generally* Am. Compl.)  Thereafter, Kampfer sought entry of default pursuant to Fed. R. Civ. P. 55(a) and N.D.N.Y. L.R. 55.1, citing Cuomo's failure to timely respond to his amended complaint, (Dkt. No. 23), which, by one day, preceded Cuomo's renewal of his motion to dismiss against the amended complaint, (Dkt. No. 22).  Pointing out that Cuomo failed to timely serve an answer to the amended complaint, Kampfer again sought entry of default.  (Dkt. No. 28.)  The Clerk eventually entered Cuomo's default. (Dkt. No. 32.)  Following entry of default, Cuomo moved to vacate the default pursuant to Fed. R. Civ. P. 55(c), (Dkt. No. 33), and Kampfer cross moved for default judgment, (Dkt. No. 34).

### III.  Standards of Review

### A.    Motion to Set Aside Default

"The court may set aside an entry of default for good cause," Fed. R. Civ. P. 55(c), which requires the court's consideration of three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the

_____

one days after service of Cuomo's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Fed. R. Civ. P. 15(a)(1)(B).  Accordingly, the operative pleading is Kampfer's amended complaint.

6

moving party has presented a meritorious defense." *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012).

## B. **Motion to Dismiss**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV. **Discussion**

## A. **Default**

Cuomo contends that his default should be set aside. (Dkt. No. 33, Attach. 3 at 2-9.) In particular, he claims that good cause is shown because his delay in responding to the amended complaint "was due to a calendaring error," and, thus, was not willful; he has a meritorious defense to the action for the reasons stated in his original motion to dismiss; and, finally, because the parties have been carrying on as though there was no default, Kampfer has suffered no resulting prejudice. (*Id.*) In one filing, Kampfer both opposes Cuomo's motion and seeks entry of a default judgment. (Dkt. No. 34.) Because Cuomo has shown good cause, his motion is granted and his default is set aside.

An extended discussion is not warranted.  Satisfied that good cause has been shown for the reasons set forth in his memorandum of law, and on the authority of *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-98 (2d Cir. 1993), the court sets aside Cuomo's default.  In light thereof, Kampfer's cross motion for entry of a default judgment, (Dkt. No. 34), is denied as moot.  *See United States v. Premises & Real Prop. with Bldgs., Appurtenances, & Improvements Located at 26 E. Park St., Albion, NY*, No. 07-CV-759S, 2008 WL 4596210, at *2 (W.D.N.Y. Oct. 14, 2008).

**B.**	**Motion to Dismiss**

Having granted Cuomo's motion to set aside entry of default, the court also grants his letter motion seeking to renew his motion to dismiss as against the amended complaint.  (Dkt. No. 22.)  Before considering Cuomo's arguments in support of dismissal, however, the court must endeavor to decipher what causes of action Kampfer has alleged in his amended complaint.  This is no easy task.

In the preamble to his amended complaint, Kampfer alleges that he has filed a civil rights action seeking declaratory and injunctive relief:

> to defend and protect [his] rights . . . , guaranteed
> under the Second Amendment of the United States
> Constitution . . . to keep and bear arms and, to be

> protected by the rights of the laws of the United States and the Unites States Constitution pursuant to Article VI of the United States Constitution as Supreme Law of the Land[.]

(Am. Compl. ¶ 1.)  In the same introductory section, Kampfer claims that Cuomo:

> [arbitrarily] and [capriciously] signed into law the [SAFE Act], banning [him] the right to be armed and to defend his country, his home, and for self defense, with a[n] "assault weapon" of Military style, make and model, having the ability to fire or shoot ammunition in a clip, magazine holding seven rounds of ammunition or less the same as other citizen(s) of the United States . . . ; the arbitrary act of signing the [SAFE Act], further banning [him] the rights that shall not be infringed, under the Second Amendment by allowing a "Grandfather" clause within the [SAFE Act], in banning [him] of the ability to buy, purchase, or trade for a[n] "assault weapon" after the January 15, 2013 effective date of the law, because [he] who is not a felon or mentally ill, did not own a[n] "assault weapon" prior to the January 15, 2013 effective date of the law.

(*Id.*)  After reciting the sparse facts mentioned above, *see supra* Part II.A, Kampfer seeks the following relief:

> [A] Declaratory Judgment, declaring that the Administrative Act of . . . Cuomo, signing into law the [SAFE Act] which deprives [him] of owning, buying or trading for a[n] "assault weapon" which is legal under Federal Law as **<u>ARBITRARY</u>** and **<u>CAPRICIOUS</u>**[; and]

> . . . a Permanent Injunction requiring . . . Cuomo
> . . . to remand the [SAFE Act] back to the State of
> New York Assembly and Senate for further actions
> not inconsistent with this Court[']s rulings.

(*Id.* ¶ 5.)

Bearing in mind that Kampfer's amended complaint "must be construed liberally 'to raise the strongest arguments [it] suggest[s],'" *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)), the court discerns three possible claims. While Kampfer seeks relief related to the entirety of the SAFE Act, (Am. Compl. ¶ 5), his pleading, read liberally, alleges: (1) a facial challenge to the portions that altered or created restrictions and prohibitions on "assault weapons" under Second Amendment principles; (2) an equal protection challenge to the grandfather provision under a class-of-one theory; and (3) a claim that the state procedures under which the SAFE Act came into being was somehow infirm, rendering the entirety of the legislation invalid.[6]

_____

[6] While Kampfer specifically mentions "a clip, magazine holding seven rounds of ammunition or less," the court does not read the amended complaint to attack that portion of the SAFE Act that made it unlawful to possess an ammunition feeding device that has a capacity of more than seven rounds of ammunition. In any event, had Kampfer alleged such a claim, the amendment to the SAFE Act suspending and

It is noteworthy that, while Cuomo fails to address whether Kampfer has made out a facial challenge to those portions of the SAFE Act that prohibit and restrict "assault weapons," he argues, generically, that Kampfer has failed to do so with respect to the grandfather provision. (Dkt. No. 17, Attach. 1 at 4-7.) Moreover, Cuomo contends that Kampfer has failed to allege that the grandfather provision violates the Equal Protection Clause because: (1) he is not similarly situated to people who owned assault weapons prior the SAFE Act's enactment; and, alternatively, (2) the grandfather provision does not unconstitutionally burden his Second Amendment rights. (*Id.* at 7-12.) In response to these arguments, Kampfer merely contends that the Supreme Court of the United States in *District of Columbia v. Heller*, 554 U.S. 570 (2008), held that the only tolerable restrictions on the Second Amendment right were with respect to possession by felons or mentally ill individuals, carrying firearms in sensitive places, such as schools and government buildings, and laws

_____

declaring ineffective those provisions, *see* L. 2013, ch. 57, pt. FF, § 4, would render his claim moot. Nor does the court perceive a challenge to the prohibition against loading more than seven rounds into an ammunition feeding device with a larger capacity. Kampfer apparently mentions a "magazine holding seven rounds of ammunition or less" merely to compare himself with non-New Yorkers. (Am. Compl. ¶ 1.)

imposing qualification on the commercial sale of arms.  (Dkt. No. 25 at 1-2.)[7]  The thrust of Kampfer's argument is that the SAFE Act imposes greater restrictions than those identified by the Court as permissible.  (*Id.* at 2.)

    1.    *Facial Challenge Under the Second Amendment: "Assault Weapon" Restriction and Prohibition*[8]

Cuomo first argues that Kampfer's facial challenge must fail because the SAFE Act "does not ban all or even most firearms, including handguns, shotguns, and rifles which have been customarily used for protection in the home, hunting or target shooting, but only military-style weapons deemed by the Legislature to pose a particular public safety threat."  (Dkt. No. 17, Attach. 1 at 6.)

_____

    [7] Kampfer's assertion is plainly without merit.  Indeed, the Court specifically noted that the regulatory measures identified by Kampfer were provided "only as examples" and that the list of presumptively lawful regulatory measures "does not purport to be exhaustive."  *Heller*, 554 U.S. at 627 n.26.  In any event, the ineptitude of Kampfer's response does not compel the demise of his amended complaint.  The court must measure Kampfer's claims as against the applicable law, whether identified by him in response to Cuomo's motion to dismiss or not.

    [8] It is noteworthy that Kampfer cannot make an as applied challenge to the SAFE Act's "assault weapon" ban because it has not been applied to him, nor has he shown, or even alleged, a genuine threat of enforcement.  *Cf. Ellis v. Dyson*, 421 U.S. 426, 432 (1975).

Facial challenges are typically disfavored as they "often rest on speculation," which, "[a]s a consequence, . . . raise[s] the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Moreover, such challenges undercut "the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 450-51 (internal quotation marks and citations omitted). To be successful, a litigant that attacks the facial validity of a statute "must establish that no set of circumstances exists under which the Act would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973), or that it "at least . . . lacks a 'plainly legitimate sweep,'" *United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012).

Turning to the constitutional rights implicated here, in *McDonald v.*

*City of Chicago*, 130 S. Ct. 3020 (2010), the Supreme Court of the United States held "that the Second Amendment right is fully applicable to the States." *Id.* at 3026. Although well known, the Second Amendment text is worth repeating: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As explained by the Court in *McDonald*, "individual self-defense is 'the *central component*' of the Second Amendment right." *McDonald*, 130 S. Ct. at 3036 (quoting *Heller*, 554 U.S. at 599). The Court also noted, first in its decision in *Heller*, and again in *McDonald*, that handguns are "'the most preferred firearm in the nation to keep and use for protection of one's home and family.'" *Id.* (quoting *Heller*, 554 U.S. at 628-29) (some internal quotation marks omitted). Accordingly, the Court concluded that citizens must be permitted to use handguns for self-defense. *Id.* In neither decision did the Court articulate the appropriate standard of review to apply to a Second Amendment challenge—a matter that has generated some confusion. *See generally* Andrew Peace, Comment, *A Snowball's Chance in* Heller*: Why* Decastro's *Substantial Burden Standard is Unlikely to Survive*, 54 B.C. L. Rev. E. Supp. 175, 180-82 (2013). Importantly, even in finding a statute prohibiting

handguns as violative of the Second Amendment in *Heller*, 554 U.S. at 635, the Court cautioned that its holding "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," *id.* at 626-27.

More recently, in *United States v. Decastro*, the Second Circuit confronted a Second Amendment challenge to 18 U.S.C. § 922(a)(3). *See* 682 F.3d 160. Dealing with the question of what standard of review applies to such a challenge, the Circuit held "that heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment." *Id.* at 164, 166 ("[H]eightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)."). By default then, if Second Amendment rights are "only minimally affect[ed]," the statute "is not subject to any form of

heightened scrutiny." *Id.* at 164[9]; *see Kwong v. Bloomberg*, 723 F.3d 160, 167 (2d Cir. 2013).

Here, the SAFE Act does not impose a substantial burden on Kampfer's exercise of his Second Amendment rights.[10] Indeed, as with

---

[9] Notably, short of deciding the issue, the Supreme Court expressed its unfavorable view of rational basis scrutiny, explaining that "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Heller*, 554 U.S. at 628 n.27. In any event, regardless of the characterization of the applicable standard of review identified by the Second Circuit in *Decastro*, that precedent is binding on this court.

[10] The court recognizes that one of its sister courts very recently reached a different conclusion on this issue, and applied intermediate scrutiny to a SAFE Act challenge pertaining to "assault weapons." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, No. 13-CV-291S, 2013 U.S. Dist. LEXIS 182307, at *37, *39-44 (W.D.N.Y. Dec. 31, 2013). In support of its finding that a substantial burden was imposed on the Second Amendment through the SAFE Act's treatment of "assault weapons," that court explained that "because the SAFE Act renders acquisition of these weapons illegal under most circumstances, this Court finds that the restrictions at issue more than 'minimally affect' Plaintiffs' ability to acquire and use the firearms, and they therefore impose a substantial burden on Plaintiffs' Second Amendment rights." *Id.* at *37. This court frames the issue slightly differently, and measures the burden placed upon the Second Amendment right to bear arms generally; in other words, any burden upon the possession of an "assault weapon" is relevant only insofar as it generally impacts one's ability to possess arms. Accordingly, for reasons explained elsewhere in this decision, the SAFE Act, as challenged here, does not substantially burden Kampfer's Second Amendment right.

§ 922(a)(3) in *Decastro*, the SAFE Act's alteration of the definition of "assault weapon" and the corresponding Penal Law sections restricting or prohibiting them "does not substantially burden the fundamental right to obtain a firearm sufficient for self-defense." *Decastro*, 682 F.3d at 168-69. As explained above, *see supra* Part II.B, the restrictions and prohibitions do not create a categorical ban on an entire class of weapons, and ample firearms remain available to carry out the "'*central component*'" of the Second Amendment right: self-defense. *McDonald*, 130 S. Ct. at 3036 (quoting *Heller*, 554 U.S. at 599).

Bearing in mind that Kampfer was compelled to make a significant showing to be successful on his facial challenge, he has not shown that the portions of the SAFE Act restricting or prohibiting "assault weapons" are unconstitutional in all of their applications or that they lack a legitimate sweep. *See Mongielo v. Cuomo*, 40 Misc. 3d 362, 366 (N.Y. Sup. Ct. 2013). Accordingly, because the provisions at issue attempt only to decrease in number certain firearms deemed particularly dangerous by the legislature for the sake of public safety, which interests are clearly advanced by the legislation, they do not infringe the Second Amendment right to keep and bear arms, and are plainly legitimate in their sweep. *See*

*Decastro*, 682 F.3d at 168-69.  It follows that Kampfer's first claim, attacking the facial validity of those portions of the SAFE Act that restrict and prohibit "assault weapons," is dismissed.

>    2.    *Equal Protection: Grandfather Provision*

Next, Cuomo asserts that Kampfer has failed to state an equal protection claim.  (Dkt. No. 17, Attach. 1 at 7-12.)  Principally, Cuomo argues that Kampfer is not being treated differently than those similarly situated to him.  (*Id.* at 7-8.)  Alternatively, Cuomo contends that the statutes about which Kampfer complains do not substantially burden his Second Amendment right, triggering rational basis review, which the challenged provisions pass.  (*Id.* at 8-12.)  Kampfer initially made no argument whatsoever regarding the grandfather provision.  (Dkt. No. 25 at 1-2.)  However, since the court gave him permission to file an otherwise unpermitted reply in further support of his motion for default judgment, (Dkt. No. 38), he argues that: (1) he is similarly situated to citizens that owned "assault weapons" prior to the enactment of the SAFE Act; and (2) the grandfather clause acts as a total ban to possession or ownership of an "assault weapon," and, therefore, burdens his Second Amendment rights, (Dkt. No. 39 at 7-8).  For the reasons explained below, Kampfer's

equal protection claim fails.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). To succeed on a class-of-one equal protection claim, the plaintiff "must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s himself]." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks and citation omitted). Some distinctions in treatment are permissible, but they must "'have some relevance to the purposes for which the classification is made.'" *Kwong*, 723 F.3d at 169 (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)). Where the complained of statute "neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Here, assuming, without deciding, that Kampfer has been treated

differently than those similarly situated to him, the bundle of laws he takes issue with do not burden his fundamental Second Amendment right for reasons similar to those explained above, *see supra* Part IV.B.1, nor do they target a suspect class. As such, the lowest level of constitutional review applies, and—for the same reasons Kampfer's facial challenge is unassailable—his equal protection claim fails when measured against that standard. *See Kwong*, 723 F.3d at 169-72.

### 3. The State Process

Little discussion is warranted on this cause of action because the court declines to exercise supplemental jurisdiction of this claim arising out of matters of state law. Indeed, Kampfer's agitation regarding the process by which the SAFE Act came into being is an issue of New York law and procedure. In any event, it is worth noting that the state courts have dealt with similar issues and found them to be without merit. *See, e.g.*, *Schulz v. State of N.Y. Exec.*, 108 A.D.3d 856 (3d Dep't 2013).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Cuomo's motion to set aside default (Dkt. No. 33) is **GRANTED**; and it is further

**ORDERED** that Kampfer's cross motion for entry of a default judgment (Dkt. No. 34) is **DENIED** as moot; and it is further

**ORDERED** that Cuomo's letter motion seeking to renew his motion to dismiss against the amended complaint (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Cuomo's motion to dismiss (Dkt. No. 17) is **GRANTED** and Kampfer's amended complaint (Dkt. No. 21) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 7, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court